1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   JERRY PARKINSON and LINDA
    ROBERTS, individually and on behalf        NO:  10-CV-0345-TOR
8   of a Class of similarly situated
    Washington families,                       ORDER GRANTING DEFENDANT
9                                              PHAN'S MOTION TO DISMISS AND
                              Plaintiffs,       GRANTING DEFENDANTS
10                                             NGYUEN'S HAN'S AND VU'S
            v.                                 MOTIONS FOR SUMMARY
11                                             JUDGMENT
    FREEDOM FIDELITY
12  MANAGEMENT, INC, a California
    corporation d/b/a FREEDOM
13  FINANCIAL MANAGEMENT;
    ALLIANCE8, INC., a Nevada
14  corporation; JIMMY G. PHAN,
    individually; HUY NGUYEN,
15  individually; JOHNNY VU,
    individually: HAIAU HAN a/k/a
16  HYLE HAN, etc., individually,

17                            Defendants.

18        BEFORE THE COURT are the following motions: (1) Defendant Phan's

19  Motion to Dismiss (ECF No. 118); (2) Plaintiffs' Motion to Amend Scheduling

20  Order and Withdraw Motion for Summary Judgment as to Defendant Phan (ECF

    ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
    GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
    SUMMARY JUDGMENT ~ 1

No. 123); (3) Plaintiffs' Motion for Summary Judgment as to Defendants Nguyen, Han and Vu (ECF No. 107); (4) Defendants Nguyen's Han's and Vu's Motion for Summary Judgment (ECF No. 102); and (5) Plaintiffs' Motion for Default Judgment as to Defendants Freedom Fidelity Management and Alliance8 (ECF No. 98).

The Court heard oral argument on these motions on May 9, 2012.  Plaintiffs were represented by Matthew Zuchetto and Andrew Biviano.  Defendant Phan was represented by Douglas Siddoway and Michael Mallow.  Defendants Nguyen, Han and Vu were represented by Aaron Bigby.  The Court has reviewed the motions, the responses, and the replies, and is fully informed.

BACKGROUND

This is a class action lawsuit against two consumer debt settlement businesses and their current and former owners and corporate officers.  Plaintiffs have alleged that Defendants violated the Washington Debt Adjusting Act by (1) charging customers initial fees in excess of $25.00; (2) retaining more than 15% of customers' individual monthly payments as fees for services rendered; and (3) failing to distribute customers' funds to creditors within 40 days of receipt. Plaintiffs have sued under the Washington Consumer Protection Act to recover all fees received by Defendants in violation of Washington law and for attorneys' fees and costs.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 2

Plaintiffs have moved for summary judgment against individual defendants Nguyen, Han and Vu, and for entry of default judgment against corporate defendants Freedom Fidelity Management and Alliance8. Defendants Nugyen, Han and Vu oppose Plaintiffs' motion and have moved for summary judgment on the ground that they cannot be held personally liable for the corporate defendants' conduct. Defendant Phan has moved to dismiss the claims against him on the ground that Plaintiffs failed to timely serve him with their Amended Complaint. Because these motions involve the same set of operative facts, the court will address them simultaneously.

## PROCEDURAL HISTORY

Plaintiffs Jerry Parkinson and Linda Roberts filed this lawsuit against Defendant Freedom Fidelity Management, Inc. ("FFM") on August 6, 2010, in Stevens County Superior Court on behalf of a class of similarly-situated plaintiffs. ECF No. 1. In their Complaint, Plaintiffs alleged that FFM engaged in predatory debt adjustment practices in violation of the Washington Debt Adjusting Act ("DAA"), RCW Chapter 18.28, and the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86. Plaintiffs sought damages under the CPA, injunctive relief, and class certification.

Defendant FFM removed this case to federal court on October 1, 2010, pursuant to 28 U.S.C. § 1441 and the Class Action Fairness Act ("CAFA"). ECF

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 3

No. 1.  On November 19, 2011, FFM filed an answer to Plaintiffs' Complaint.

ECF No. 16.  Plaintiffs then filed an Amended Complaint on June 7, 2011, adding

Defendants Alliance8, Inc., Jimmy Phan, Huy Nguyen, Haiau Han, and Johnny

Vu.  ECF No. 50.  On July 25, 2011, the court entered an order of default against

Alliance8.  ECF No. 67.  The court subsequently entered an order of default

against FFM on September 28, 2011.  ECF No. 74.

Defendants Nguyen, Han and Vu filed an answer to Plaintiff's Amended

Complaint on September 21, 2011.  ECF No. 72.  Plaintiffs moved for class

certification on September 29, 2011.  ECF No. 75.  Defendants subsequently filed

a response in which they did not contest class certification.  ECF No. 86.  The

court certified Plaintiffs' proposed class on January 10, 2012.  ECF No. 93.

On February 29, 2012, Plaintiffs moved for the entry of default judgment

against FFM and Alliance8 and for summary judgment against individual

Defendants Phan, Nguyen, Han and Vu.  ECF Nos. 98, 107.  Defendants Nguyen,

Han and Vu moved for summary judgment against Plaintiffs on the same date.

ECF No. 102.  Defendant Phan moved to dismiss all claims against him on March

5, 2012.  ECF No. 118.  On March 9, 2012, Plaintiffs moved to withdraw their

motion for summary judgment against Defendant Phan and to amend the court's

scheduling order as to Defendant Phan only.  ECF No. 123.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 4

FACTS

**I.     Facts Relevant to Defendant Phan's Motion to Dismiss and Plaintiffs' Motion to Amend Scheduling Order**

Plaintiffs filed their Amended Complaint on June 7, 2011.  Shortly thereafter, Plaintiffs made three unsuccessful attempts to serve Defendant Phan. According to Plaintiffs, these attempts proved unsuccessful because they did not possess Phan's current address.  ECF No. 143-1.  Following these unsuccessful service attempts, Plaintiffs elected to suspend their efforts to serve Phan "due to the mounting costs of unsuccessful service attempts."  ECF No. 143-1 at ¶ 19. Plaintiffs did, however, continue their attempts to locate Phan's current address through discovery propounded to other defendants.

In July of 2011, Plaintiffs discovered a new address for a person matching Phan's name in California.  Rather than attempting to serve Phan personally at this address, Plaintiffs mailed a copy of the Amended Complaint and a waiver of service request addressed to Defendant Phanon July 25, 2011.  Plaintiffs did not receive a response to this mailing.  Plaintiffs continued to mail pleadings to this address for the next six months.  Once again, Plaintiffs did not receive responses to any of these mailings.

On January 27, 2012, Plaintiffs deposed two of Phan's co-defendants.  One of these defendants, Han Nguyen, confirmed that Phan did in fact reside at the address in California to which Plaintiffs had mailed the Amended Complaint and

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 5

1    subsequent pleadings.  Plaintiffs then made four unsuccessful attempts to serve

2    Phan at this address before effectuating proper service on February 13, 2012.  As

3    of this date, the court's scheduling order afforded Phan only four days to engage in

4    pre-trial discovery and only sixteen days to file dispositive motions.  ECF No. 21.

5        Counsel for both parties conferred about the untimely service on February

6    29, 2012.  Recognizing that Phan would not have a meaningful opportunity to

7    participate in discovery or motion practice, Plaintiffs' counsel offered to stipulate

8    to a modification of the existing scheduling order.  Phan's counsel declined to

9    stipulate to a modification of the scheduling order unless Plaintiffs' counsel was

10   willing to set aside the previously-entered class certification.  Plaintiffs' counsel

11   declined to revisit the class certification issue.  Defendant subsequently filed a

12   motion to dismiss for failure to timely serve the Amended Complaint; Plaintiffs

13   then filed a motion to amend the court's scheduling order.

14   **II.    Facts Relevant to Motions for Summary Judgment**

15        A. Defendant Freedom Fidelity Management's Business

16        Defendant Freedom Fidelity Management is a now-defunct consumer debt

17   settlement company.  While in business, FFM contracted with consumers to settle

18   their outstanding private debts to credit card companies and other creditors.  Like

19   many business in the debt settlement industry, FFM created customized debt-

20   reduction plans for each individual customer based upon the customer's total

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 6

outstanding debt and his or her ability to make fixed monthly payments.  These plans required FFM's customers to deposit funds into dedicated "savings" accounts from which FFM would periodically pay creditors pursuant to negotiated settlement agreements.  In exchange for providing these services, FFM charged its customers various one-time, recurring and contingent fees.

From March of 2008 until October of 2011, FFM served approximately 276 customers in the State of Washington.  ECF No. 1.  Each of these customers signed written standard form contracts with FFM which outlined the services that FFM would provide and the fees that it would charge to the customer.  *See* ECF No. 78-3 at 45-54.  The standard form contracts signed by Washington customers took one of three forms.  Under the first version (hereinafter "first contract"), FFM charged its customers a one-time "retainer fee" equal to twelve percent (12%) of the customer's total contracted debt; a recurring monthly "maintenance fee" in the amount of $15.00; and a periodic "settlement fee" equal to eight percent (8%) of the amount by which FFM was able to reduce any individual debt obligation. Under the second version (hereinafter "second contract"), FFM charged a one-time "retainer fee" equal to twelve percent (12%) of the customer's total contracted debt; a recurring monthly "maintenance fee" in the amount of $25.00; and a periodic "settlement fee" equal to four percent (4%) of the amount by which FFM was able to reduce any individual debt obligation.  Finally, under the third version

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 7

(hereinafter "third contract"), FFM charged only a one-time "retainer fee" equal to fourteen percent (14%) of the customer's total contracted debt.  The following table summarizes the fees charged under the three different versions of FFM's standard form contract:

<u>Fees Charged by FFM</u>

|  | **Contract 1** | **Contract 2** | **Contract 3** |
|---|---|---|---|
| **Retainer Fee** | 12% of total contracted debt | 12% of total contracted debt | 14% of total contracted debt |
| **Maintenance Fee** | $15 | $25 | none |
| **Settlement Fee** | 8% of amount by which any single debt reduced | 4% of amount by which any single debt reduced | None |

The manner in which FFM collected its retainer fees also varied across the three contracts.  Under the first contract, FFM applied 100% of the customer's monthly payments toward the retainer fee until the fee had been paid in full. Viramontes Dep., ECF No. 135-1, at 84:7-24.  Under the second contract, FFM applied 100% of the customer's first three (3) monthly payments and approximately 30% of any subsequent monthly payments toward the retainer fee until the fee had been paid in full.  Viramontes Dep., ECF No. 135-1, at 92:12-22, 94:12-25, 95:11-96:3.  Under the third contract, FFM applied 70% of the customer's first six (6) monthly payments and approximately 30% of any subsequent monthly payments toward the retainer fee until the fee had been paid in

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 8

full.  Viramontes Dep., ECF No. 135-1, at 103:24-104:6.  The following table

summarizes the manner in which FFM collected its retainer fees under the three

different versions of its service agreements:

Collection of Retainer Fees

|  | **Contract 1** | **Contract 2** | **Contract 3** |
|---|---|---|---|
| **Initial Payments** | 100% of all monthly payments until fee paid in full | 100% of first 3 monthly payments | 70% of first 6 monthly payments |
| **Subsequent Payments** | n/a | 30% of subsequent payments until fee paid in full | 30% of subsequent payments until fee paid in full |

B. Ownership and Management of Defendant FFM

FFM was formed in March of 2008 by Defendant Jimmy Phan and two other

persons who are not parties to this lawsuit.  Phan served as a corporate officer of

FFM from March of 2008 until July of 2010.  During this time, FFM created and

implemented the service agreements described above.

In July of 2010, Defendant Alliance8, Inc., through its owners and officers,

Defendants Nguyen, Han and Vu, purchased FFM and a separate debt settlement

business from Defendant Phan for $1.3 million.  Prior to purchasing FFM, Nguyen,

Han and Vu reviewed a spreadsheet which listed the names and addresses of

FFM's existing customers, the amount of each customer's contracted debt, the

amount of fees which each customer had already paid, and the amount of fees left

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 9

1    to collect from each customer.  As of July 2010, FFM had more than 10,000

2    customers, approximately 276 of whom resided in the State of Washington.

3        Shortly after purchasing the company, Nguyen, Han and Vu installed

4    themselves as FFM's corporate officers and began overseeing its day-to-day

5    operations.   In an effort to better understand the fees charged to customers under

6    the various iterations of FFM's service agreement, Nguyen printed out and

7    reviewed a copy of each customer's contract.  Nguyen then implemented a training

8    program to educate FFM's customer service employees about how to respond to

9    customers' billing questions.

10        In September of 2010, Plaintiffs served a copy of their class action

11   complaint on FFM.  Although Nguyen, Han and Vu understood the nature of

12   Plaintiffs' allegations (*i.e.*, that FFM's fee practices violated Washington law),

13   they did not believe that they had any authority to alter or amend the fees specified

14   in the existing service agreements.  Accordingly, FFM continued to charge

15   Washington customers based upon the fee structures in the existing agreements.

16        FFM and Alliance8 ceased operations on October 14, 2011.  Both

17   companies' assets have since been liquidated in a bankruptcy-like proceeding in

18   California known as a "general assignment."  From March of 2008 to October of

19   2011, FFM collected $909,106.02 in total fees from Washington customers.  Of

20

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 10

that total, $72,493.81 was collected after Nguyen, Han and Vu purchased the company in July of 2010.

ANALYSIS

## I.    Defendant Phan's Motion to Dismiss

    A. <u>Dismissal for Failure to Prosecute Under Rule 41(b)</u>

Defendant Phan has moved for dismissal with prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  To prevail on this motion, Phan must first establish that Plaintiffs unreasonably delayed in prosecuting their case against him.  *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010).  To the extent that Phan can establish unreasonable delay, the court must then weigh the following five factors in determining whether dismissal with prejudice is warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Id.*  A reviewing court need not make explicit findings of fact with regard to each factor.  *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986).

Here, there is no evidence that Plaintiffs "unreasonably delayed" in prosecuting their case against Phan.  Although Phan was not served until approximately eight months after the Amended Complaint was filed, the record

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 11

reflects that Plaintiffs made several efforts to locate and serve Phan during this time.  The record further reflects that Platiniffs' efforts to serve Phan were impeded to some degree by difficulties in verifying Phan's address.  While it is true that Plaintiffs could have undertaken additional efforts to serve Phan during this time, their conduct was not unreasonable.  Given that Plaintiffs promptly renewed their efforts to serve Phan upon affirmatively verifying his address through Defendant Han, the court finds that Plaintiffs' conduct was not so unreasonable as to warrant the "harsh penalty" of dismissal with prejudice under Rule 41(b).  *Henderson*, 779 F.2d at 1423.  Furthermore, as discussed below, the court finds that Plaintiffs' delay in serving their Amended Complaint is more appropriately addressed under Federal Rule of Civil Procedure 4(m).

B. Dismissal for Failure to Effectuate Timely Service Under Rule 4(m)

Federal Rule of Civil Procedure 4(m) provides that a complaint must be served upon a defendant within 120 days of filing.  Rule 4(m) also governs the procedure that a district court must follow in the event that service is not completed within 120 days:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 12

Fed. R. Civ. P. 4(m).  Thus, Rule 4(m) "*requires* a district court to grant an extension of time when the plaintiff shows good cause for the delay." *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007) (emphasis in original) (citation omitted).  Though not readily apparent from its text, Rule 4(m) also "*permits* the district court to grant an extension even in the absence of good cause." *Id.* (emphasis in original); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

There is no established definition of "good cause" under Rule 4(m). However, the Ninth Circuit has indicated that "[a]t a *minimum*, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (emphasis added).  Since *Boudette* was decided, Rule 4(m) has been amended to allow for an extension even in the absence of good cause.  Several courts have subsequently indicated that a showing of "good cause" requires something *more* than excusable neglect.  *See Lemoge v. United States*, 587 F.3d 1188, 1198 n.3 (9th Cir. 2009) ("In addition to excusable neglect, a plaintiff may be required to show [actual notice, absence of prejudice to defendant, and severe prejudice to plaintiff] to bring the excuse to the level of good cause."); *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (holding that "'good cause' requires a greater showing than 'excusable neglect'" in the context of Rule 4(m)); *In re Sheehan*, 253 F.3d at 507 (noting that Rule 4(m) was amended in 1993 to resolve a "seeming incongruity" between the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 13

Procedure, which allowed for an extension of time to serve a complaint only on a

showing of "good cause" and "excusable neglect," respectively).  Thus, the court

concludes that a mere showing of "excusable neglect" is insufficient to warrant

"good cause" under Rule 4(m).

The Ninth Circuit has directed district courts to consider the following

factors when determining whether Rule 4(m)'s good cause requirement has been

satisfied: (1) whether the party to be served received actual notice of the lawsuit;

(2) the degree of prejudice to the defendant caused by the delay; and (3) whether

the plaintiff would be severely prejudiced by the dismissal of his complaint.

*Sheehan*, 253 F.3d at 512.  Although prejudice to the defendant is a critical

consideration, "[l]ack of prejudice by itself is not sufficient to establish good

cause."  *United States v. 2,164 Watches, More or Less, Bearing a Registered*

*Trademark of Guess?, Inc.*, 366 F.3d 767, 773 n.2 (9th Cir. 2004).

Here, the factors set forth above weigh against a finding of good cause.

First, with regard to notice, there is no conclusive evidence that Defendant Phan

received *actual* notice of this litigation until he was served with the Amended

Complaint on February 13, 2012.  Although Plaintiffs mailed copies of the

Amended Complaint, a waiver of service form, and other pleadings to an address

which later proved to be Phan's beginning in July of 2011 (*see* ECF No. 143-1 at ¶

20), they have produced no competent evidence that these documents were actually

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 14

delivered to this address (*i.e.*, not returned as undeliverable) or that they were actually routed to Phan upon delivery.[1]

In addition, Plaintiffs' delay in serving the Amended Complaint has caused Phan considerable prejudice. First, this delay deprived Phan of any meaningful opportunity to participate in discovery or motion practice. When he was finally served with the Amended Complaint on February 13, 2012, Phan had a mere four days to complete discovery and only sixteen days to file dispositive motions under the court's existing scheduling order. As of that date, the deadlines for designating expert witnesses had passed. The scheduled bench trial was four months away. More importantly, however, Plaintiffs' delay in serving their Amended Complaint precluded Phan from contesting class certification. Given that the court's decision to certify the class exponentially increased Phan's and his co-defendants' potential liability, there is no question that Phan has been severely prejudiced.

---

[1] Notably, Plaintiffs have not indicated whether the address to which they mailed their pleadings (and the address at which they ultimately served Phan) is a residential address or a business address. In the absence of specific details about the type of address, the court will not speculate about the likelihood that Phan actually received these documents.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 15

Contrary to Plaintiffs' assertions, this prejudice to Phan cannot be cured by simply extending the existing discovery deadlines, continuing the trial, and allowing Phan to "challenge" class certification.  Given that the court has already certified the class, allowing the case to proceed against Phan at this juncture would necessarily require Phan to defend against the claims of the entire class from the outset.  Although Plaintiffs suggest that Phan could "challenge" the existing class certification, they have expressly declined to revisit the class certification anew.  ECF No. 152 at ¶ 3.  The court finds that allowing Phan to "challenge" certification without vacating the certification order itself would impermissibly shift the burden of proof onto Phan.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ("The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23.").  Moreover, the court notes that Plaintiffs have continued to press for summary judgment against Defendants Nguyen, Han and Vu in favor of the entire class.  The court finds that allowing Plaintiffs to proceed on behalf of the entire class while allowing Phan to nominally "challenge" class certification would be a hollow remedy.

Finally, Plaintiffs have failed to establish "severe prejudice" resulting from dismissal of their claims against Phan without prejudice.  *Sheehan*, 253 F.3d at 512.  Although Plaintiffs have argued that dismissal would "prevent hundreds of

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 16

1   victims of a business crime from obtaining relief," (*see* ECF No. 140 at 12), the

2   court concludes that a dismissal without prejudice would not produce such a

3   dramatic result.  In the absence of any obvious statute of limitations problem,[2] any

4   prejudice to Plaintiffs caused by a dismissal without prejudice is outweighed by the

5   prejudice to Phan if the case against him were allowed to proceed.  *See Lemoge*,

6   587 F.3d at 1195 (holding that prejudice to a plaintiff caused by dismissal pursuant

7   to Rule 4(m) is particularly acute when the statute of limitations would preclude

8   the plaintiff from re-filing his or her case).  Accordingly, Plaintiffs have not shown

9   good cause for their failure to timely serve Phan.

10          Having concluded that Plaintiffs are not entitled to a mandatory extension of

11  Rule 4(m)'s 120-day service deadline, the court must now consider whether a

---

13  [2] Plaintiffs have made only one passing reference to the statute of limitations on

14  their claims against Phan: "Even if the dismissal were without prejudice,

15  Defendant would likely argue that the statute of limitations has expired."  ECF No.

16  140 at 12.  The statute of limitations on a Consumer Protection Act claim is four

17  years.  RCW 19.86.120.  Given that Phan was an owner and officer of FFM from

18  March of 2008 until July of 2010, it is unclear why Plaintiffs would encounter a

19  substantial statute of limitations problem if they were forced to re-file their claims

20  against Phan.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 17

1   discretionary extension is warranted.  In performing this analysis, the court must

2   apply the more lenient "excusable neglect" standard.  *See Lemoge*, 587 F.3d at

3   1198 ("[I]f good cause is not established, the district court may extend the time for

4   service upon a showing of excusable neglect.").  "Excusable neglect 'encompasses

5   situations in which the failure to comply with a . . . deadline is attributable to

6   negligence,' and includes 'omissions caused by carelessness.'" *Id.* at 1192

7   (quoting *Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388, 394

8   (1993)).  When determining whether neglect is excusable, the court must consider:

9   (1) the danger of prejudice to the opposing party; (2) the length of the delay and its

10  potential impact on the proceedings; (3) the reason for the delay; and (4) whether

11  the movant acted in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395).   In the

12  context of a motion to dismiss for failure to comply with Rule 4(b)'s 120-day

13  service requirement, a court must also consider prejudice to the plaintiff.  *Id.* at

14  1198.

15      As discussed above, the competing prejudice to Plaintiffs and Phan weighs

16  heavily in favor of dismissal: any prejudice to Plaintiffs resulting from a dismissal

17  without prejudice is significantly outweighed by the prejudice that Phan would

18  suffer if he was required to muster a defense at this late juncture.  Thus, the

19  relevant question is whether a discretionary extension could still be warranted in

20  view of the "the reason for the delay" and the nature of the Plaintiffs' conduct.  *Id.*

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 18

at 1192.  With regard to the Plaintiffs' conduct, the court finds that Plaintiffs acted in good faith.  There has been no suggestion that Plaintiffs acted with an improper motive when attempting to serve Phan, and the court declines to infer any such motive from the evidence presented.

With regard to the reasons for the delay, however, the court finds that Plaintiffs' unilateral decision to suspend service attempts in order to minimize costs does not amount to excusable neglect.  Plaintiffs acknowledge that they consciously elected to suspend their efforts to serve Phan in June of 2011 "[d]ue to the mounting costs of unsuccessful service attempts."  ECF No. 141 at ¶ 19.  According to Plaintiffs, their four prior attempts at service were unsuccessful because "Plaintiffs did not possess Phan's current address, and no attorney appeared on behalf of Phan."  ECF No. 141 at ¶ 19.

The following month, however, Plaintiffs discovered a new potential address for Phan:

> In July 2011, research discovered an address for a person of the same name [Jimmy Phan] in California.  Plaintiffs mailed a notice of the lawsuit and request for the waiver of service to Defendant Phan at this address.  The notice elicited no response.  Plaintiffs also mailed copies of pleadings to Defendant Phan at this same address.  Again, Plaintiffs received no response.

ECF No. 141 at ¶ 20.  Inexplicably, Plaintiffs did not attempt to serve Phan at this address upon "discovering" it in July of 2011.  Instead, Plaintiffs simply began mailing documents to this address in hopes that (1) the address belonged to

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 19

Defendant Jimmy Phan rather than someone else by the same name;[3] and (2) Phan would voluntarily agree to waive service.  While this "wait-and-see" approach might have been a reasonable *first step* in light of Plaintiffs' lack of success in serving Phan at other addresses, it did not accomplish its intended result.  After receiving no response to their mailings within a reasonable time, it was incumbent upon Plaintiffs to attempt formal service—at least once—within Rule 4(m)'s 120-day window.[4]  Given that Plaintiffs *consciously decided* not to do so, the court finds that their delay in serving Phan does not amount to excusable neglect.

---

[3] Plaintiffs' counsel suggested at the hearing on Defendant's motion that "Phan" is a common last name among California residents.  While that may be true, there is no evidence that Plaintiffs were struggling to locate Defendant Jimmy Phan among several individuals named "Jimmy Phan" when they began mailing their pleadings.  Indeed, the fact that Plaintiffs mailed their pleadings to *one* address only suggests that they were reasonably confident that the address belonged to the Defendant.

[4] Phan has presented uncontested evidence that the cost of service of process on an individual defendant in Orange County, California, is $50.00.  ECF No. 151 at ¶ 2.  The court finds that this would have been a reasonable cost for Plaintiffs to have incurred under the circumstances.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 20

1   Accordingly, the court grants Phan's motion to dismiss and denies Plaintiffs'

2   motion to amend the existing scheduling order.

3   **II.     Summary Judgment on Plaintiffs' CPA Claims**

4           Summary judgment is appropriate when a moving party demonstrates "that

5   there is no genuine dispute as to any material fact and that the movant is entitled to

6   judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for

7   summary judgment bears the initial burden of informing the court of the basis for

8   its motion and of identifying the portions of the affidavits, pleadings, and

9   discovery that demonstrate an absence of a genuine issue of material fact. *Celotex*

10  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When parties file simultaneous cross-

11  motions for summary judgment, the court must consider the materials identified

12  and submitted in conjunction with both motions before ruling on either. *Fair*

13  *Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th

14  Cir. 2001).

15          For purposes of a summary judgment motion, a fact is "material" if it might

16  affect the outcome of the suit under the governing law. *See Anderson v. Liberty*

17  *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A dispute is "genuine" as to a material

18  fact if there is sufficient evidence for a reasonable jury to return a verdict for the

19  non-moving party. *Id.* at 248.  In determining whether there is a genuine issue of

20  material fact sufficient to preclude summary judgment, a court must construe the

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 21

facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

The Washington Debt Adjusting Act ("DAA"), RCW Chapter 18.28, governs the business of debt adjusting in the State of Washington. The DAA is "a remedial statute enacted to stem the numerous unfair and deceptive practices rife in the growing debt adjustment industry." *Carlsen v. Global Client Solutions, LLC*, 171 Wash.2d 486, 498, 256 P.3d 321 (2011) (internal quotation marks and citation omitted). Consistent with this purpose, courts must construe the DAA "liberally in favor of the consumers it aims to protect." *Id.*

The DAA imposes three limitations on fees charged by debt adjusters. First, the statute prohibits debt adjusters from charging consumers an initial fee in excess of $25.00. RCW 18.28.080(1). Second, the statute prohibits debt adjusters from retaining more than fifteen percent (15%) of any one payment as a fee for services rendered. RCW 18.28.080(1). Third, the statute prohibits debt adjusters from charging fees in excess of fifteen percent (15%) of the total debt listed on the contract. RCW 18.28.080(1).

There are two remedies available to a consumer who has been charged an illegal debt adjustment fee. First, a consumer may declare the entire contract void and seek repayment of all fees paid to the debt adjuster under the contract. RCW 18.28.090. Second, a consumer may sue the debt adjuster under the Washington

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 22

Consumer Protection Act for engaging in "an unfair or deceptive act or practice in the conduct of trade or commerce."  RCW 18.28.185; *Carlsen*, 171 Wash.2d at 500, 256 P.3d 321, 327.

A. <u>Plaintiffs' Consumer Protection Act Claims</u>

Plaintiffs have asserted two causes of action under the Consumer Protection Act ("CPA") stemming from alleged violations of the DAA.  First, Plaintiffs have sued FFM and Alliance8 for (1) charging Washington consumers initial fees in excess of $25; and (2) retaining more than 15% of those customers' individual payments as fees for services rendered.  Second, Plaintiffs have sued Defendants Phan, Nguyen, Han, and Vu in their individual capacities for "approving, ratifying, participating in, and aiding and abetting" FFM's allegedly illegal fee practices. ECF No. 145 at 3.

To prevail on their CPA claims, Plaintiffs must prove that: (1) Defendants engaged in an unfair or deceptive act or practice; (2) the act or practice occurred in the conduct of trade or commerce; (3) the act or practice impacted the public interest; (4) they suffered an injury to their business or property; and (5) the injury was caused by the Defendants' unfair or deceptive act or practice.  *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wash.2d 421, 442, 228 P.3d 1260, 1269 (2010).  If Plaintiffs prevail on either of

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 23

1    their CPA claims, they may recover actual damages as well as reasonable

2    attorneys' fees and costs.  RCW 19.86.090.

3           Pursuant to the legislative mandate set forth in RCW 18.28.185, a violation

4    of the DAA constitutes an unfair or deceptive act or practice occurring in the

5    conduct of trade or commerce.  Accordingly, proof that Defendants violated the

6    DAA's fee restrictions satisfies first two elements of Plaintiffs' CPA claims.  Proof

7    that Defendants violated the DAA also satisfies the third element of Plaintiffs'

8    CPA claims, as violations of the DAA clearly implicate the public interest.  *See*

9    *Carlsen*, 171 Wash.2d at 501, 256 P.3d 321, 328 (Chambers, J., concurring)

10   (recounting the historic abuse of Washington consumers by debt adjusters and

11   opining that "chronic and systemic abuses" of vulnerable debtors still persist

12   despite the DAA); *see also* 2012 Wash. Legis. Serv. Ch. 56 (S.B. 6155) (WEST)

13   (amending the DAA effective June 7, 2012, to expressly regulate third-party

14   account administrators and declaring that violations of such regulations

15   "substantially affect[] the public interest" within the meaning of the CPA).

16   Consequently, the dispositive inquiries for purposes of the instant cross-motions

17   for summary judgment are (1) whether Defendants violated the DAA's fee

18   restrictions; (2) whether Plaintiffs were injured; and (3) whether any injuries

19   sustained were proximately caused by Defendants' conduct.  *Columbia Physical*

20   *Therapy, Inc.*, 168 Wash.2d at 442, 228 P.3d at 1269.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 24

1.  *Did Defendants Violate the Debt Adjusting Act?*

Plaintiffs contend that Defendants violated RCW 18.28.080(1) by charging Washington customers initial fees exceeding $25.00.  In support of this assertion, Plaintiffs point to (1) the three standardized service agreements between FFM and its Washington customers; and (2) the deposition testimony of Carmen Viramontes, FFM's Rule 30(b)(6) corporate designee.  Specifically, Plaintiffs note that FFM, through its own agent, admitted that it charged its Washington customers a "retainer fee" which generally amounted to several hundreds of dollars.  Viramontes Dep., ECF No. 135-1, at 73:7-23, 85:9-22.

Plaintiffs also contend that Defendants violated RCW 18.28.080(1) by retaining more than 15% of their Washington customers' individual monthly payments as fees for services rendered.  In support of this contention, Plaintiffs note that FFM applied either 100% or 70% of its customers' first several monthly payments toward its upfront retainer fees.  Plaintiffs further note that FFM charged its customers monthly "maintenance fees" and periodic "settlement fees" which, when combined with FFM's amortized retainer fees, exceeded 15% of Washington customers' monthly payments.

Finally, Plaintiffs contend that FFM violated RCW 18.28.110(4) by failing to distribute funds collected from its Washington customers to creditors within forty (40) days of receipt.  In support of this assertion, Plaintiffs filed twenty (20)

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 25

1    "Account Activity Statements" created by one of FFM's partner companies, Global

2    Client Solutions, LLC ("GCS").  *See* Bergland Decl., Exhibit G, ECF No. 136-1, at

3    6-70.  According to Plaintiffs, each of these twenty statements reflects that FFM

4    failed to distribute the customer's funds to creditors within 40 days of receipt.

5          At the outset, the court notes that the parties do not dispute the manner in

6    which FFM's retainer fees, maintenance fees and settlement fees were calculated

7    and billed to Washington customers.  Although the amount of the fees varied by

8    customer according to which of the three versions of the contract the customer had

9    signed, there is no genuine issue of material fact concerning the fees charged or

10    billing structures employed.  Accordingly, the relevant question for purposes of

11    compliance with the DAA is whether these fees actually violated RCW

12    18.28.080(1).

13          First, there is no question that FFM's retainer fees violated RCW

14    18.28.080(1)'s prohibition on initial fees exceeding $25.00.  Given that FFM

15    charged each of its Washington customers an upfront retainer fee of either 12% or

16    14% of the total contracted debt—a fee which invariably amounted to several

17    hundreds of dollars—the court finds that FFM clearly violated the DAA's initial

18    fee restrictions.

19          Similarly, there is clear evidence that the manner in which FFM collected its

20    retainer fees violated RCW 18.28.080(1)'s prohibition on retaining more than 15%

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 26

of any individual payment as a fee for services rendered.  The court finds that FFM violated the DAA under the first contract by retaining 100% of a customer's monthly payments until its entire retainer fee had been collected; under the second contract by retaining 100% of a customer's first three monthly payments and approximately 30% percent of any subsequent payments until its entire retainer fee had been collected; and under the third contract by retaining 70% of a customer's first six monthly payments and 30% of any subsequent payments until its entire retainer fee had been collected.

With regard to FFM's alleged failure to timely distribute customer funds, the court acknowledges that the twenty "exemplar" statements submitted by Plaintiffs tend to indicate that FFM withheld funds beyond 40 days in violation of RCW 18.28.110(4).  However, Plaintiff has not specified how these exemplar statements were selected from the larger sample (*i.e.*, whether they were selected at random or in some other manner).  Thus, the court concludes that it has insufficient information from which to rule in favor of or against the entire class on the issue of potential violations of RCW 18.28.110.

In sum, Plaintiffs have produced undisputed evidence that FFM violated the DAA by (1) charging Washington customers a retainer fee in excess of $25; and (2) retaining fees in excess of 15% of these customers' individual monthly

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 27

payments.  Accordingly, Plaintiffs have proven the first, second and third elements of their CPA claims.

2.  *Were Plaintiffs Injured?*

To prevail on the fourth element of their CPA claims, Plaintiffs must prove that they were injured.  In the CPA context, proof of any injury to business or property will suffice.  *Columbia Physical Therapy*, 168 Wash.2d at 442, 228 P.3d 1260, 1269.  Moreover, courts must construe the CPA's injury requirement liberally to include any deprivation of money or property, however slight.  *See, e.g.*, *Mason v. Mortgage Am., Inc.*, 114 Wash.2d 842, 854, 792 P.2d 142, 148 (1990) ("The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal."); *Sorrel v. Eagle Healthcare, Inc.*, 110 Wash.App. 290, 298-99, 38 P.3d 1024, 1029 (Div. 1, 2002) (unlawful retention of pre-paid funds for a period of two weeks by healthcare services provider was sufficient to satisfy CPA injury requirement).  As discussed above, it is undisputed that FFM charged unlawful retainer fees and retained unlawful portions of individual monthly payments.  Accordingly, the court concludes that Plaintiffs have proven a cognizable injury under the CPA.  *See Sorrel*, 110 Wash.App. at 298-99, 38 P.3d 1024, 1029.

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 28

3. *Were Plaintiffs' Injuries Caused by Defendants' Conduct?*

To prevail on the fifth element of their CPA claims, Plaintiffs must prove that their injuries were proximately caused by Defendants' conduct. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 83, 170 P.3d 10, 22 (2007) ("A plaintiff [suing under the CPA] must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury"). The court concludes that causation is readily apparent: but for FFM charging fees which violated the DAA, Plaintiffs would not have been injured.

B. Personal Liability of Individual Defendants

Plaintiffs have sought to hold Defendants Nguyen, Han and Vu personally liable for violating the DAA's fee restrictions on the ground that these individuals were complicit in FFM's wrongful conduct. In support of this argument, Plaintiffs cite two Washington Supreme Court cases for the proposition that a corporate officer who participates in, approves of, ratifies or aids and abets conduct which violates the CPA may be held personally liable for damages flowing from that conduct. *See State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wash.2d 298, 553 P.2d 423 (1976), and *Grayson v. Nordic Constr. Co.*, 29 Wash.2d 548, 599 P.3d 1271 (1979). Because Defendants Nguyen, Han and Vu knew that FFM was charging its customers illegal fees when they purchased the

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 29

company in July of 2010, Plaintiffs argue, these defendants may be held personally liable for any damages awarded under the CPA.

Plaintiffs are correct that a corporate officer may face personal liability for conduct which violates the Consumer Protection Act if he or she "participate[d] in" or "with knowledge approve[d] of" the practice which violates the CPA. *Ralph Williams*, 87 Wash.2d at 322, 553 P.2d 423, 439; *Grayson*, 92 Wash.2d at 554, 599 P.2d 1271, 1274. Though separate from the doctrine of "piercing the corporate veil," this theory of liability recognizes that "[c]orporate officers cannot use the corporate form to shield themselves from individual liability." *Ralph Williams*, 87 Wash.2d at 322, 553 P.2d 423, 439.

As illustrated by *Ralph Williams*, however, personal liability should not be imposed upon a corporate officer unless he or she has engaged in particularly damaging conduct. *See Ralph Williams*, 87 Wash.2d at 306, 553 P.2d 423, 430 (imposing personal liability on owner of car dealership who personally implemented "a comprehensive sales system designed to confuse and deceive the customer"); *Grayson*, 92 Wash.2d at 554, 599 P.2d 1271, 1274 (imposing personal liability on contractor who affirmatively misrepresented his ability to provide financing in order to win business); *One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Inv., Inc.*, 108 Wash.App. 330, 347-48, 30 P.3d 504, 512-13 (Div. 1, 2001), *vacated on alternative grounds*, 148 Wash.2d 319, 61 P.3d 1094 (2002)

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 30

1   (declining to impose personal liability where officer's actions "d[id] not rise to the

2   level of those condemned" in *Ralph Williams*; officer did not engage in conduct

3   "so wrongful or deceptive that it would justify imposing personal liability").

4   Stated differently, "wrongful conduct" for purposes of imposing personal liability

5   on a corporate officer is a question of degree.

6          Moreover, Washington case law appears to draw a distinction between

7   "unfair" and "deceptive" practices within the meaning of the CPA for purposes of

8   imposing personal liability on a corporate officer.  Indeed, both *Ralph Williams*

9   and *Grayson* involved corporate officers who generated business by means of

10  deception rather than unfair business practices.  *See Grayson*, 92 Wash.2d at 554,

11  599 P.3d 1271, 1274 ("In *Ralph Williams*, this court considered a deceptive

12  practice in violation of the Consumer Protection Act to be a type of wrongful

13  conduct which justified imposing personal liability on a participating corporate

14  officer.") (emphasis added); *see also Bradley v. Morgan Drexen, Inc.*, 2009 WL

15  2870508 at *4 ("*Deceptive* practices in violation of the Consumer Protection Act

16  are the type of wrongful conduct that justifies imposing personal liability on a

17  participating corporate officer.") (E.D. Wash. 2009) (unpublished decision)

18  (emphasis added) (citing *Grayson*, 92 Wash.2d at 554, 599 P.2d 1271, 1274);

19  *Omni Innovations, LLC, v. Impulse Mktg. Grp., Inc.*, 2007 WL 2110337 at *2

20  (W.D. Wash. 2007) ("In Washington, a *deceptive* practice in violation of the

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 31

Consumer Protection Act is the type of wrongful conduct that justifies imposing personal liability on a corporate officer.") (unpublished decision) (emphasis added).  Conversely, the court has discovered no reported cases in which a corporate officer was held personally liable for engaging in *unfair* business practices.

Here, it is undisputed that Defendants Nguyen, Han and Vu served as FFM's executive officers and oversaw the company's operations from July of 2010 until October of 2011.  It is also undisputed that these Defendants reviewed and presumably understood FFM's fee structures before they purchased the company.  Further, it is undisputed that these Defendants received constructive notice that FFM's fee structures might violate Washington law when they were served with Plaintiffs' complaint in the instant case in September of 2010.  Finally, it is undisputed that these Defendants continued to collect the fees specified in the existing service agreements after purchasing the company.

In view of these undisputed facts, the court finds that Defendants Nguyen, Han and Vu either knew or should have known that FFM's fees violated Washington law.  Nevertheless, given that these Defendants merely inherited FFM's existing service agreements from prior management, the court concludes that they did not "participate in" or "approve of" the corporate conduct to such a degree that imposing personal liability would be appropriate.  *See Grayson*, 92

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND
GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR
SUMMARY JUDGMENT ~ 32

1  Wash.2d at 554, 599 P.2d 1271, 1274.  Moreover, even assuming *arguendo* that

2  these Defendants tacitly "approved of" FFM's illegal fee practices by failing to

3  change them, such conduct does not rise to the level of the deliberate and deceptive

4  conduct condemned in *Ralph Williams* and *Grayson*.  In sum, imposing personal

5  liability on these Defendants—in the absence of any meaningful showing of

6  "wrongful conduct"—would amount to imposing *de facto* personal liability for a

7  rather transparent CPA violation.  The court is unwilling to sanction such a result.

8  Accordingly, Defendants Nguyen's, Han's and Vu's motion for summary

9  judgment is granted.

10  ### III.    Plaintiffs' Motion for Default Judgment as to FFM and Alliance8

11      Given that FFM and Alliance8 are presently in default, the only remaining

12  issue is the amount of damages that Plaintiffs are entitled to recover from these

13  defendants.  As discussed above, however, the court has reservations about

14  awarding damages in the amount of all fees paid to FFM by Washington

15  customers.  Accordingly, the court will refrain from entering default judgment

16  against FFM and Alliance8 until the parties have had an opportunity to submit

17  additional briefing and supporting admissible evidence pertaining to the issue of an

18  appropriate measure of "actual damages" as that term is used in the CPA.

19

20

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Phan's Motion to Dismiss (ECF No. 118) is **GRANTED**;

2. Plaintiffs' Motion to Amend Scheduling Order and Withdraw Motion for Summary Judgment as to Defendant Phan (ECF No. 123) is **DENIED**;

3. Plaintiffs' Motion for Summary Judgment as to Defendants Nguyen, Han and Vu (ECF No. 107) is **DENIED**;

4. Defendants Nguyen's, Han's and Vu's Motion for Summary Judgment (ECF No. 102) is **GRANTED**; and

5. Plaintiffs' Motion for Default Judgment as to Defendants Freedom Fidelity Management and Alliance8 (ECF No. 98) is **DENIED** with leave to renew.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 29th day of May, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT PHAN'S MOTION TO DISMISS AND GRANTING DEFENDANTS NGYUEN'S HAN'S AND VU'S MOTIONS FOR SUMMARY JUDGMENT ~ 34