UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY PARKINSON and LINDA ROBERTS, individually and on behalf of a Class of similarly situated Washington families,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FIDELITY MANAGEMENT, INC, a California corporation d/b/a FREEDOM FINANCIAL MANAGEMENT; and ALLIANCE8, INC., a Nevada corporation,<br><br>Defendants. | NO: 10-CV-0345-TOR<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT |

BEFORE THE COURT is Plaintiffs' Motion for Entry of Default Judgment (ECF No. 167) as to Defendants Freedom Fidelity Management, Inc. and Alliance8, Inc. This motion was heard without oral argument on October 5, 2012. The Court has reviewed the motion and supporting materials and is fully informed.

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 1

PROCEDURAL HISTORY

Plaintiffs filed this class action lawsuit against Defendants Freedom Fidelity Mortgage, Inc. ("FFM") and Alliance8, Inc. ("Alliance8") and other individual defendants in Stevens County Superior Court in August of 2010. Over one year later, after removal of the case to this Court, the Clerk of Court entered default against FFM and Alliance8 for failure to answer, plead or otherwise defend. ECF Nos. 67 and 74.

On January 10, 2012, the Court granted Plaintiffs' motion to certify a class consisting of all Washington residents who entered into a debt settlement program managed by FFM. ECF No. 93. Certification of this class was not contested by any of the non-defaulting individual defendants.

On May 29, 2012, the Court granted summary judgment in favor of the non-defaulting individual defendants. This ruling left only FFM and Alliance8 remaining in the case (albeit in default status). ECF No. 163. Also on May 29, the Court denied Plaintiffs' motion for entry of default judgment against FFM and Alliance8 with leave to renew pending supplemental briefing on the appropriate measure of damages for a *per se* Consumer Protection Act ("CPA") claim based upon a violation of the Washington Debt Adjusting Act's ("DAA") statutory fee restrictions. ECF No. 163 at 33. Plaintiffs have since renewed their motion for

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 2

entry of default judgment with additional authority in support of their request for actual damages in the amount of all fees retained by FFM.

ANALYSIS

Federal Rule of Civil Procedure 55(b) governs the entry of default judgment against a defaulting defendant. Under Rule 55(b)(1), the Clerk of Court may enter default judgment when the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). When the value of the plaintiff's claim cannot be readily determined, by contrast, the plaintiff must move the court for entry of default judgment. Fed. R. Civ. P. 55(b)(2). In such circumstances, the court has broad discretion to marshal any evidence necessary in order to calculate an appropriate award. *See* Fed. R. Civ. P. 55(b)(2)(A)-(D).

**A. Actual Damages**

The Washington Consumer Protection Act ("CPA") allows an injured consumer to recover "actual damages" flowing from an unfair or deceptive business practice, as well as reasonable attorney's fees and costs. RCW 19.86.090. Plaintiffs argue that the appropriate measure of "actual damages" for purposes of their *per se* CPA claims is the total amount of fees paid to FFM by Washington consumers less the total amount of distributions paid to creditors. In other words, Plaintiffs contend that they are entitled to recover *all* fees retained by FFM from class members.

In support of this argument, Plaintiffs suggest that the DAA itself creates a "property right" in favor of a debtor who is charged fees in excess of those permitted by statute. Plaintiffs cite to RCW 18.28.090, which provides:

> If a debt adjuster contracts for, receives or makes any charge in excess of the maximums permitted by [the DAA] . . . the debt adjuster's contract with the debtor shall be void and the debt adjuster *shall return to the debtor the amount of all payments received from the debtor or on the debtor's behalf and not distributed to creditors*.

RCW 18.28.090 (emphasis added). Thus, according to Plaintiffs, a debtor who is charged a single illegal fee is entitled to "the return of all money paid under a debt-adjusting program reduced only by the amount of proceeds actually distributed to creditors." ECF No. 169 at 8 (emphasis omitted).

While there is reason to question whether RCW 18.28.090 creates an unqualified "property right" in favor of debtors, there can be no dispute that the statute requires debt adjusters to disgorge themselves of *all* fees collected in violation of the DAA. As Plaintiffs correctly note, this statute was clearly designed to penalize debt adjusters who violate the DAA's fee restrictions by ensuring that they receive no compensation whatsoever for their services. Indeed, absent this penalty, a debt adjuster would have little incentive to comply with the DAA's fee restrictions, as any enforcement action would simply strip the debt adjuster of any fees in excess of those that it was entitled to collect in the first place. The Court must give effect to this legislative intent. Accordingly,

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 4

consistent with the DAA's purpose of "stem[ming] the numerous unfair and deceptive practices rife in the growing debt adjustment industry" and the Washington State Legislature's mandate that the DAA be "construed liberally in favor of the consumers it aims to protect," *see Carlsen v. Global Client Solutions, LLC*, 171 Wash.2d 486, 498 (2011), the Court concludes that RCW 18.28.090 establishes the proper measure of damages for a *per se* CPA claim based upon a violation of the DAA's statutory fee restrictions. Plaintiffs are thus awarded actual damages in the amount of $909,106.02.[1]

**B. Attorney's Fees**

A court awarding attorney's fees to a successful CPA plaintiff must calculate the amount of the award by "(1) establishing a 'lodestar' fee by multiplying a reasonable hourly rate by the number of hours reasonably expended on theories necessary to establish the elements of a Consumer Protection Act cause of action; and (2) adjusting that lodestar up or down based upon the contingent nature of success (risk) and, in exceptional circumstances, based also on the quality of work performed." *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122

---

[1] *See* Decl. of Tom Moore, ECF No. 1, at 13-15 ("[FFM] has collected approximately $909,106.02 in total from residents of the State of Washington."); *see also* Defs.' Notice of Removal, ECF No. 1, at ¶ 11.

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 5

Wash.2d 299, 335 (1993) (citation omitted). The lodestar figure must be limited to hours reasonably expended and must not account for hours spent on unsuccessful or unrelated claims. *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 597, 675 P.2d 193 (1983). In determining whether an attorney's claimed hourly rate is reasonable, a court may consider the attorney's customary hourly billing rate, the level of skill required by the litigation, the time limitations imposed on the litigation, the amount of potential recovery, the attorney's reputation, and the undesirability of the case. *Id.*

Once a lodestar fee has been calculated, a court must determine whether an upward or downward adjustment is warranted based upon factors that have not already been incorporated into the lodestar calculation. *Id.* at 593-94. In general, those factors fall into one of two broad categories: "the contingent nature of success, and the quality of work performed." *Id.* at 598. Because a lodestar calculation results in a "presumptively reasonable fee," *224 Westlake, LLC v. Engstrom Prop., LLC*, --- Wash. App. ---, 281 P.3d 693, 713 (2012), courts must exercise caution when considering whether an upward or downward adjustment is warranted.

The purpose of a contingency adjustment (also known as a contingency multiplier) is to incentivize attorneys to take high-risk contingency cases which might otherwise go unprosecuted. *Chuong Van Pham v. City of Seattle, Seattle*

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 6

*City Light*, 159 Wash.2d 527, 541 (2007). In determining whether a contingency multiplier is warranted in a given case, a court must assess the likelihood of success at the outset of the litigation and should disregard time spent on the case after recovery has been assured. *Bowers*, 100 Wash.2d at 598-99; *see also Smith v. Behr Process Corp.*, 113 Wash. App. 306, 343 (2002) (affirming trial court's use of a pre-default contingency multiplier and a post-default contingency multiplier). While a trial court has broad discretion in awarding a contingency multiplier, it should generally refrain from doing so when "the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees." *Bowers*, 100 Wash.2d at 598-99. In other words, a court should only award a contingency multiplier when "the lodestar figure does not adequately account for the high risk nature of the case." *Pham*, 159 Wash.2d at 542.

With regard to adjustments for the quality of work performed, Washington courts have consistently held that such adjustments are "an extremely limited basis for adjustment, because in virtually every case the quality of work will be reflected in the reasonable hourly rate." *Bowers*, 100 Wash.2d at 598-99. Accordingly, applying a quality of work multiplier is "unwarranted unless the quality of representation is found to be truly exceptional for the rate charged." *224 Westlake, LLC*, --- Wash. App. ---, 281 P.3d at 713.

//

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 7

1. Lodestar Calculation

Plaintiffs assert that an appropriate lodestar calculation as to their CPA claims is $121,955.50, based upon 451.52 hours expended at the current hourly billing rates of their attorneys and legal support staff. As an initial matter, the Court finds that the rates charged by the Scott Law Group's attorneys and legal support staff are reasonable. In reaching this conclusion, the Court is mindful that these same rates have been approved by another judge in this district in three separate CPA class action cases involving violations of the DAA. *See* Carlsen v. Freedom Debt Relief, 09-CV-0055-LRS (E.D. Wash.) at ECF No. 195; Wheeler v. NoteWorld, 10-CV-0202-LRS (E.D. Wash.) at ECF No. 156; Carlsen v. Global Client Solutions, 09-CV-0246-LRS (E.D. Wash.) at ECF No. 219. The Court also finds that the 451.52 hours billed by the Scott Law Group are reasonable.[2] Counsel has appropriately reduced its total hours billed by more than fifty percent to account for work performed on claims on which Plaintiffs did not ultimately prevail (*i.e.*, CPA claims against FFM's and Alliance8's corporate officers and directors).

The Court questions whether the current hourly rates, rather than the historic

---

[2] The Court has reviewed a detailed accounting of the Scott Law Group's claimed hours *in camera* and finds that the hours claimed are reasonable.

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 8

hourly rates, are the appropriate measure of reasonable attorney fees. The Supreme Court has endorsed an appropriate adjustment for the delay in payment of attorney fees within the contemplation of the fee shifting civil rights statute (42 U.S.C. § 1988) – whether by application of current rather than historic hourly rates or otherwise. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989). The Ninth Circuit has likewise approved these methods in arriving at a reasonable fee in the ERISA context. *Welch v. Metropolitan Life Insurance, Co.*, 480 F.3d 942, 947 (2007) ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement."). Washington courts agree. Calculating the fee based on counsel's current, rather than historical rate was not error. *Steele v. Lundgren*, 96 Wash. App. 773, 785-86 (1999); *see also Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wash.2d 364, 375-78 (1990). The Court accepts the use of the current hourly billing rates of Plaintiffs' attorneys and legal support staff in order to arrive at a reasonable fee. Accordingly, the Court will award a lodestar fee in the amount of **$121,955.50**.

      2. <u>Contingency and Quality of Work Multipliers</u>

Plaintiffs' counsel have requested that the Court apply a multiplier of 1.7 to account for the risk they assumed in taking this case and the quality of the work

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT
JUDGMENT ~ 9

1  they have performed.  ECF No. 169 at 25.  In support of this request, Plaintiffs
2  note that (1) the prospect of success on their CPA claims was highly uncertain at
3  the outset of the case; (2) they face additional obstacles to recovering any potential
4  judgment from the now-defunct corporate Defendants; and (3) their efforts to
5  enforce the DAA's fee restrictions in a private attorney general capacity have
6  changed the manner in which many debt adjusters do business in the State of
7  Washington.

8      As an initial matter, the Court will decline to apply a quality of work
9  multiplier because the quality of the work performed by Plaintiffs' counsel is
10 already reflected in their hourly billing rates.  *See Bowers*, 100 Wash.2d at 598-99.
11 Although Plaintiff's counsel have indeed performed quality work, the Court does
12 not find that their work has been "truly exceptional" based upon the rates charged.
13 *224 Westlake, LLC*, --- Wash. App. ---, 281 P.3d at 713.

14     In addition, the Court will not consider Plaintiff's impaired ability to
15 actually recover on a judgment against the now-defunct corporate Defendants in
16 deciding whether a contingency multiplier is warranted.  Plaintiffs have offered no
17 authority to support consideration of this circumstance, and the Court's own
18 research has not revealed any.  Given that FFM and Alliance8 folded several
19 months after this lawsuit was filed, applying a contingency multiplier to account
20 for this circumstance would not seem to promote the contingency multiplier's

purpose of incentivizing attorneys to take high-risk cases which might otherwise go unprosecuted. *See Pham*, 159 Wash.2d at 541.

The Court does agree, however, that the likelihood of success on Plaintiffs' CPA claims was uncertain at the outset of this case. Given that Plaintiffs could not have known the full extent of FFM's and Alliance8's potential liability under the CPA—or the amount of damages that they could potentially recover—when they filed this case, it seems reasonable to award them a slight increase in the lodestar fee. Accordingly, the Court will apply a contingency multiplier of 1.1, which the Court believes appropriately reflects the fact that the claims upon which Plaintiffs prevailed were uncontested by virtue of FFM's and Alliance8's default. Applying this multiplier results in a total attorney's fees award of **$134,151.05**.

**C. Costs**

Plaintiffs have requested an award of litigation costs in the amount of $362.25. These costs consist of a $230.00 filing fee and service fees in the amount of $131.25 for FFM and Alliance8. The Court finds that these costs are recoverable under the CPA. Plaintiffs are awarded costs in the amount of **$362.25**.

**D. Class Representative Stipends**

Plaintiffs have sought a stipend to be awarded to each named class representative in the amount of $5,000. In support of this request, Plaintiffs note that the named class representatives have expended significant time and effort in

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 11

assisting class counsel with this litigation. The Court finds that a stipend in the amount of $5,000 would fairly compensate the named class representatives for their efforts. Accordingly, Plaintiffs Jerry Parkinson and Linda Roberts are each awarded a stipend in the amount of **$5,000.00**. These stipends shall each be paid from the "common fund" consisting of the class's total actual damages.

### E. Prejudgment Interest

An award of prejudgment interest is authorized when the amount due on the judgment is liquidated is otherwise "determinable by computation with reference to a fixed standard." *Prier v. Refrigeration Eng'g Co.*, 74 Wash.2d 25, 32 (1968). A claim is considered liquidated when the fact finder does not need to exercise any discretion in determining the measure of damages. *Egerer v. CSR West, LLC*, 116 Wash. App. 645, 653 (2003). Stated somewhat differently, a claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier*, 74 Wash.2d at 32.

A claim is unliquidated, by contrast, "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a large or smaller amount should be allowed." *Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton*, 158 Wash.2d 506,

519 (2006) (quotation and citation omitted). In other words, "[a] claim is unliquidated if the principal must be arrived at by a determination of reasonableness." *Tri-M Erectors, Inc. v. Donald M. Drake Co.*, 27 Wash. App. 529, 538 (1980).

Here, Plaintiffs argue that they are entitled to prejudgment interest at the Washington statutory rate of 12 %[3] because the damages on their CPA claims are liquidated. The Court agrees. Although the Court was initially uncertain about the proper *measure* of damages, the sums in dispute were readily ascertainable. Accordingly, the fact that Plaintiffs' damages could not have been calculated with any precision until the Court ruled on the appropriate measure of damages does not render their claims unliquidated for purposes of awarding prejudgment interest. *See Prier*, 74 Wash.2d at 35 (awarding prejudgment interest on breach of contract claim after ruling on appropriate measure of damages in a breach of contract case). Thus, Plaintiffs are entitled to prejudgment interest in the amount of **$110,587.14**.[4]

---

[3] *See* RCW 4.56.110(4), RCW 19.52.020(1). Washington law provides for simple interest, not compound interest.

[4] The Court has applied the twelve percent prejudgment (simple, not compound) interest rate from October 14, 2011, the date on which Defendants FFM and Alliance8 ceased doing business (one year of interest at the rate of 12 %, plus five

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 13

F.  **Distribution of Any Funds Collected**

Plaintiffs have not indicated how any funds collected on the judgment will be allocated among their counsel and members of the class.  The Court is mindful that Plaintiffs' prospects of recovery are dim, but it must account for the possibility that recovery may in fact occur.  Accordingly, the Court directs Plaintiffs to refrain from distributing any funds collected on the judgment until the Court has had an opportunity to review and approve a proposed allocation among class counsel and the class (including the manner of notice and distribution to class members).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Entry of Default Judgment (ECF No. 167) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment against Defendants Freedom Fidelity Management and Alliance8 and in favor of Plaintiffs as class representatives in the total amount of $1,154,206.46 (comprised of

---

days at the daily rate of $298.884).  This calculation underestimates the amount of prejudgment interest to which class members are entitled, as each member's loss occurred prior to that date. *See Hansen v. Rothaus*, 107 Wash.2d 468, 473 (1986) (explaining that prejudgment interest begins to accrue from the date on which a plaintiff's damages are incurred).

1    actual damages in the amount of $909,106.02, prejudgment interest in the
2    amount of $110,587.14, attorney's fees in the amount of $134,151.05 and
3    costs in the amount of $362.25).  Interest will accrue on the unpaid balance
4    at the statutory rate for federal judgments, 28 U.S.C. § 1961.

5  3. **Any funds collected on the judgment shall be deposited into the Court**
6     **Registry immediately upon receipt.  Plaintiffs shall not distribute any**
7     **portion of any funds collected without further order of the Court.**
8  4. Without affecting the finality of this Judgment, the Court reserves
9     jurisdiction over this Judgment in order to allocate those funds collected
10    toward satisfaction of this Judgment.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel and **CLOSE** this file, subject to reopening when funds are deposited toward satisfaction of this Judgment.

**DATED** this 19th day of October, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT ~ 15